| | |
|---|---|
| WELD COUNTY DISTRICT COURT, STATE OF COLORADO<br>Weld County Courthouse<br>901 9th Ave; P.O. Box 2038<br>Greeley, CO 80631 | DATE FILED<br>May 13, 2025 10:27 AM<br>FILING ID: F0D1CFC5C9B4F<br>CASE NUMBER: 2025CV30441 |
| **Plaintiff:**<br>KARLA MASTERS, as Personal Representative of the ESTATE OF PEGGY MASTERS,<br><br>v.<br><br>**Defendant:**<br>SAM'S CLUB WEST, INC., a Delaware Corporation d/b/a SAM'S CLUB WEST | |
| *Attorneys for Plaintiff*:<br>Mark W. Nelson, #27095<br>Melissa J. Hessler, #35114<br>Ike M. Eckert, #39312<br>Nelson Law Firm, LLC<br>1740 N. High Street<br>Denver, Colorado 80218<br>Telephone Number:  303-861-0750<br>Facsimile Number:  303-861-0751<br>mark@nelsonlawfirm.net<br>melissa@nelsonlawfirm.net<br>ike@nelsonlawfirm.net<br><br>Christopher Kelly, #55594<br>Kingsford Law Offices<br>825 10th St., Ste. 100<br>Greeley, Colorado 80631<br>Telephone Number: 970-351-8750<br>Facsimile Number: N/A<br>office@kingsfordlaw.com | ▲ COURT USE ONLY ▲<br><br>Case Number:<br><br>Division: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff, Karla Masters, individually and as Personal Representative of the Estate of Peggy Masters, by and through her attorneys, Nelson Law Firm LLC and Kingsford Law Offices, complain against Defendant as follows:

## STATEMENT OF THE CASE

1. Peggy Masters, a 76-year-old resident of Greeley, Colorado, purchased Member's Mark loaded baked potato soup from her local Sam's Club that, upon consumption, caused her to become critically ill and later die.

2. After the initial onset of her illness, it was determined that the Member's Mark soup was tainted by botulism.

## PARTIES, JURISDICTION, AND VENUE

3. At all times relevant to this Complaint, Peggy Masters was a resident of Greeley, Colorado, County of Weld, State of Colorado.

4. Plaintiff Karly Masters is the surviving daughter and Court-appointed Personal Representative of the Estate of Peggy Masters.

5. Plaintiff, Estate of Peggy Masters, is subject to the jurisdiction of the Weld County District Court.

6. Defendant, Sam's Club West, Inc., is a Delaware Corporation operating in Colorado under Statement of Foreign Authority and maintaining a registered agent street address commonly known as 7700 E. Arapahoe Rd., Ste. 220, Centennial, CO 80112 in Arapahoe County, Colorado.

7. Upon information and belief, Defendant is not a minor, incapacitated person, in the military, nor an officer or agency of the State of Colorado.

8. Venue is proper pursuant to 98(c), because the transaction and events underlying this action took place in Weld County, Colorado.

## GENERAL ALLEGATIONS

9. On January 15, 2024 at 2:04 p.m., Peggy Masters purchased Makers Mark Loaded Baked Potato Soup ("Soup") from the Sams Club store #4770 located at 3247 23rd Avenue, Evans, Colorado 80620. *Exhibit 1 – Sam's Club Receipt.*

10. The printed Use By Date on the Soup was February 22, 2024. *Exhibit 2 – Photographs of Soup*. Peggy Masters consumed a portion of the Soup prior to the Use By Date, on or about February 7, 2024.

11. After consuming the Soup, Peggy Masters became critically ill and was transported to Greeley Hospital on February 8, 2024, where she presented with aphasia/dizziness, apneic respirations, and decreased mental status.

12. Peggy Masters' condition declined rapidly, and she was intubated on February 9, 2024. She thereafter had a tracheotomy and PEG tube inserted into her body due to functional impairment mimicking complete paralysis.

13. Given her rapidly declining neurological status, Peggy Masters was transferred from Greeley Hospital to UCHealth on February 19, 2024, where she was diagnosed with critical illness myopathy secondary to botulism, and an antitoxin was administered to minimal effect.

14. On or about February 27, 2024, the Weld County Public Health Department took possession of the Soup from Plaintiffs' Home where it had been retained since purchase and consumption.

15. The Weld County Public Health Department transmitted the Soup to the Colorado Department of Public Health and Environment ("CDPHE").

16. On or about March 6, 2024, the CDPHE submitted the Soup specimen to the Centers for Disease Control and Prevention ("CDC") for testing.

17. On or about March 7, 2024, the CDC tested the Soup and confirmed it was contaminated with botulism, described as BoNT type A, and C. botulinum type A.

18. Peggy Masters never recovered and passed away on March 3, 2025. Her cause of death was determined to be acute bronchopneumonia with chronic respiratory failure as a result of neuromuscular respiratory weakness from specified botulism.

## FIRST CLAIM FOR RELIEF
### Colorado Wrongful Death Act, C.R.S. 13-21-201 et. seq. Death by Negligence

19. Plaintiff incorporates the foregoing allegations as if set forth fully herein verbatim.

20. Peggy Masters' death was directly and proximately caused by the acts and omissions of Defendant, by and through their employees/servants/agents, when they caused the physical injuries, conscious pain and suffering, and eventually the death of Plaintiff.

21. Karla Masters, the surviving daughter and Personal Representative of the Estate of Peggy Masters, sustained pecuniary loss, mental anguish, emotional pain and suffering and other damages arising out of the death of her mother, Plaintiff Peggy Masters.

22. As a result of Peggy Master's wrongful death, Plaintiff suffered both economic and non-economic damages the value of which shall be proven at trial.

## SECOND CLAIM FOR RELIEF
### Product Liability

23. Plaintiff incorporates the foregoing allegations as if set forth fully herein verbatim.

24. Defendant was the manufacturer of the Member's Mark Loaded Baked Potato Soup ("Soup").

25. The Soup had lot number markings printed on its packaging as follows: 601770 3A3 12053 00:21. *Exhibit 2*.

26. The Defendant was engaged in the business of selling products branded as "Member's Mark" for resale, use, or consumption.

25. The Defendant sold the Soup to Plaintiff on January 15, 2024. *Exhibit 1*.

26. The Soup was tainted with botulism at the time of sale.

27. The Soup was not wholesome and/or not fit for its ordinary purpose of human consumption at the time of sale.

28. The Soup was expected to reach the consumer without substantial change in the condition in which it was sold.

29. The Soup reached the Plaintiff at the point of sale without any substantial change in its condition.

30. As a purchaser of the Soup, Plaintiff was reasonably expected to consume the Soup.

31. The Plaintiff has injuries, economic damages, non-economic damages, and losses in an amount to be proven at trial.

32. As a result of consuming the tainted Soup, Plaintiff fell ill.

33. Specifically, as a result of consuming the Soup, Plaintiff suffered from acute bronchopneumonia associated with chronic respiratory failure, resulting from neuromuscular respiratory weakness from suspected botulism.

34. Plaintiff's illness and treatments related thereto led to her death on March 3, 2025.

35. As a result of the foregoing, Plaintiff has incurred injuries, economic damages, non-economic damages, and losses in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
**Negligence Per Se**

36. Plaintiff incorporates the foregoing allegations as if set forth fully herein verbatim.

37. Defendant is a subsidiary of Walmart, Inc., and is a multibillion-dollar food retail company.

38. As a food retail giant, Defendant was aware of the dangers associated with reduced oxygen packaged food products, such as the packaged Soup.

39. Defendant knew that the Soup was manufactured and distributed using the reduced oxygen packaging method to produce Member's Mark brand Loaded Baked Potato Soup.

40. Defendant knew the extent of any and all labels present on the Soup.

41. As a food retail giant, Defendant was aware of the potential for the Soup to be improperly stored at some point after its manufacturer and before its consumption by the Plaintiff.

42. As a food retail giant and seller of reduced oxygen packaged products, including the Soup, Defendant knew or should have known about the multiple guidance documents the U.S. Food and Drug Administration ("FDA") has issued over the years to ensure consumers are adequately warned about the dangers of failing to refrigerate such products, including the danger posed by Clostridium botulinum specifically.

43. As a food retail giant, Defendant knew that the subject product's preparation instructions were insufficient to guarantee the elimination of any Clostridium botulinum Type A toxin that may have formed in the product before consumption.

44. Defendant had a duty to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, distribution, storage labeling, and sale of their food products, including without limitation, the Federal Food, Drug, and Cosmetics Act, which bans the manufacture sale, and distribution of any "adulterated food." CFR §123.6 and 123.7(a).

45. Defendant breached its duties owed pursuant to the Federal Food, Drug, and Cosmetics Act.

46. Plaintiff is among the class of persons protected by the statutory and regulatory provisions pertaining to the Defendant's manufacture, distribution, storage, labeling, and sale of their food products.

47. As a result of the foregoing, Plaintiff has incurred injuries, economic damages, non-economic damages, and losses in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
**Breach of Express Warranty of Merchantability**

48. Plaintiff incorporates the foregoing allegations as if set forth fully herein verbatim.

49. Defendant sold the Soup to Plaintiff.

50. The Defendant, by offering the food product Soup for sale in its store, expressly warranted the Soup to be safe for consumption.

51. Plaintiff is a person who was reasonably expected to consume the Soup.

52. The Soup was not safe for consumption as warranted.

53. Within a reasonable time after the Plaintiff discovered the breach of warranty, Plaintiff notified Defendant.

54. Defendant's breach of warranty caused the Plaintiff's injuries, economic damages, non-economic damages, and losses in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
**Breach of Implied Warranty of Merchantability**

55. Plaintiff incorporates the foregoing allegations as if set forth fully herein verbatim.

56. The Defendant sold the Soup to Plaintiff.

57. Plaintiff is a person who was reasonably expected to consume the Soup.

58. Defendant was a merchant with respect to the Soup.

59. The Soup was not of merchantable quality at the time of sale.

60. Within a reasonable time after the Plaintiff discovered the breach of warranty, Plaintiff notified Defendant.

61. Defendant's breach of warranty caused the Plaintiff's injuries, economic damages, non-economic damages, and losses in an amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF
**Breach of Implied Warranty of Wholesomeness of Food**

62. Plaintiff incorporates the foregoing allegations as if set forth fully herein verbatim.

63. The Defendant sold the Soup to Plaintiff.

64. Plaintiff is a person who was reasonably expected to consume the Soup.

65. Defendant was a merchant with respect to the Soup.

66. When Defendant sold the Soup to Plaintiff, Defendant warranted that the Soup was wholesome and fit for human consumption.

67. Within a reasonable time after the Plaintiff discovered the breach of warranty, Plaintiff notified Defendant.

68. Defendant's breach of warranty caused the Plaintiff's injuries, economic damages, non-economic damages, and losses in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
### Res Ipsa Loquitur

69. Plaintiff incorporates the foregoing allegations as if set forth fully herein verbatim.

70. Plaintiff was injured and died as a result of eating the Soup. Defendant manufactured the Soup for human consumption.

71. Plaintiff's injuries and death would not have occurred but for Defendant's negligence.

72. Under the circumstances of Plaintiff's illness and death, it is more likely than not Defendant's negligence was the cause since Defendant had the duty to ensure that the Soup was safe to eat.

**PLAINTIFF DEMANDS TRIAL BY JURY OF ALL ISSUES SO TRIABLE.**

WHEREFORE, Plaintiff requests that judgment enter against Defendant as follows:

1. For Plaintiff's actual damages, interest as permitted by law from the date of occurrence to the date of entry of judgment, as well as post-judgment interest until paid;

2. For all pain and suffering, annoyance, discomfort, inconvenience, and aggravation arising from Plaintiff's injuries and death;

3. For any statutory damages and penalties provided by law;

4. For moratory damages; and

5. For any other damages and remedies the Court deems just and proper.

Dated this 13th day of May, 2025.

                                    Respectfully submitted,

                                    NELSON LAW FIRM, LLC

                                    */s/ Melissa J. Hessler*
                                    Mark W. Nelson, Esq.
                                    Melissa J. Hessler, Esq.
                                    Ike M. Eckert, Esq.

**Plaintiff's Address:**
4331 W. 6th Street
Greeley, CO 80634